ORIGINAL

1  IGNACIO E. SALCEDA, State Bar No. 164017
   (isalceda@wsgr.com)
2  BETTY CHANG ROWE, State Bar No. 214068
   (browe@wsgr.com)
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
6
   Attorneys for Defendant
7  RF Micro Devices, Inc.

FILED

2008 MAY 22  A 11: 29

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR

E-FILING

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 PHILLIP CHUANZE LIAO and                C08 CASE NO. 02587 HRL
   YEECHIN SHIONG LIAO,
12                                         )  NOTICE OF REMOVAL TO THE
                  Plaintiffs,              )  UNITED STATES DISTRICT COURT
13                                         )  FOR THE NORTHERN DISTRICT OF
        v.                                 )  CALIFORNIA UNDER 28 U.S.C.
14                                         )  § 1441(a)
   RF MICRO DEVICES INC., a North Carolina )
15 corporation, and DOES 1 through 50, inclusive, )
16                Defendants.              )
                                           )
17                                         )

18        PLEASE TAKE NOTICE that defendant RF Micro Devices, Inc. hereby removes to this

19 Court the state court action described below:

20        1.      On April 25, 2008, an action was commenced in the Superior Court for the

21 County of Santa Clara, entitled *Phillip Chuanze Liao and Yeechin Shiong Liao v. RF Micro*

22 *Devices, Inc.,* Case No. 108CV111350. A copy is attached as Exhibit A.

23        2.      Defendant RF Micro Devices, Inc., is a corporation established under the laws of

24 North Carolina. Its principal executive offices are located at 7628 Thorndike Road, Greensboro,

25 North Carolina 27409-9421. *See* Complaint ¶ 3.

26        3.      The complaint does not identify Plaintiffs' citizenship. Defendant is informed

27 and believes that Plaintiffs are residents of California. Accordingly, complete diversity of

28 citizenship exists.

NOTICE OF REMOVAL TO THE UNITED                    -1-                          3350966_1.DOC
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
UNDER 28 U.S.C. § 1441(a)

1      4.     Plaintiffs' complaint does not allege a specific amount of damages but claims that "Plaintiffs have been damaged in an amount exceeding tens of millions of dollars." Complaint ¶ 17. *See also id.* ¶ 22 ("Plaintiffs were damaged in an amount exceeding tens of millions of dollars...").

5.     In light of the above, this is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(a) in that it is a civil action wherein the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.     Plaintiffs have yet to serve defendant but defendant has received notice of the action.

7.     Accordingly, all of the requirements of 28 U.S.C. § 1332 are present and less than 30 days have elapsed between service or notice of this suit and this Notice of Removal as is required by 28 U.S.C. § 1446(b), therefore this action may properly be removed to this Court under 28 U.S.C. § 1441(a).

Dated: May 22, 2008

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____
Ignacio E. Salceda

Attorneys for Defendant
RF Micro Devices, Inc.

ORIGINAL

1   GEORGE A. YUHAS  (SBN 78678)
    YAS RAOUF (SBN 254962)
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
3   405 Howard Street
    San Francisco, CA  94105
4   Telephone:    (415) 773-5700
    Facsimile:    (415) 773-5759
5   E-mail: gyuhas@orrick.com
    E-mail: yraouf@orrick.com
6

7   Attorneys for Plaintiffs,
    PHILLIP CHUANZE LIAO and YEECHIN SHIONG LIAO
8

UCS

FILED  Santa Clara Co
04/25/08    2:24pm
Kiri Torre
Chief Executive Offic
By: ailas OTSCIVDID11
R#20080042922
CK                    $320.00
                      $320.00
Case: 1-08-CV-111350

9               SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                      COUNTY OF SANTA CLARA
11                       UNLIMITED JURISDICTION
12

13
14   PHILLIP CHUANZE LIAO and           CASE NO.
     YEECHIN SHIONG LIAO,                    108CV111350
15
                    Plaintiffs,          COMPLAINT FOR:
16                                       (1) BREACH OF CONTRACT
          v.                             (2) BREACH OF IMPLIED COVENANT OF
17                                       GOOD FAITH AND FAIR DEALING
     RF MICRO DEVICES INC., a North
18   Carolina corporation, and DOES 1 through
     50, inclusive,
19
                    Defendants.
20
21
22
23
24
25
26
27
28

OHS West:260424911.7

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

1    Plaintiffs Phillip Chuanze Liao and Yeechin Shiong Liao ("Liaos") allege as follows:

2    <u>**THE PARTIES**</u>

3    1.    Plaintiffs are individuals who signed the agreements giving rise to the present

4    action.

5    2.    Plaintiffs bring this suit against RF Micro Devices, Inc. ("RFMD"), which became

6    the successor-in-interest to Sirenza Microdevices, Inc. ("Sirenza") by merger on November 13,

7    2007.

8    3.    On information and belief, defendant RFMD is a North Carolina corporation with

9    its principal place of business at 7625 Thorndike Road, Greensboro, North Carolina, County of

10   Guilford.

11   4.    The true names and capacities of defendants Does 1 through 50, inclusive, and/or

12   the facts rendering them liable, are unknown to Plaintiffs, and so Plaintiffs sue said defendants by

13   such fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiffs further

14   allege that each of said fictitious defendants is in some manner responsible for the acts and

15   occurrences hereinafter set forth, and that Plaintiffs' damages as alleged in this complaint were

16   caused proximately by such defendants.  Plaintiffs will amend this complaint to show each

17   fictitious defendant's true name and capacity when the same are ascertained, as well as the

18   manner in which each fictitious defendant is responsible for damages to Plaintiffs.

19   <u>**FACTUAL BACKGROUND**</u>

20   5.    For some time prior to 2005, Plaintiffs wholly owned Premier Devices, Inc.

21   ("Premier"), which engaged in the business of broadband communication components and

22   subsystems.

23   6.    Sirenza—a supplier of radio frequency components—offered to purchase Premier

24   from Plaintiffs in 2005, but the parties were unable to reach agreement on any transaction.

25   7.    In 2006, Sirenza made another bid to purchase Premier.  Plaintiffs made clear they

26   were willing to sell Premier in exchange for stock, and that they intended to liquidate that stock at

27   the earliest possible time.  Negotiations resulted in the consummated purchase of Premier by

28

OHS West:260424911.7

-2-

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

1 | Sirenza that year ("the Merger").

2 |      8.    As part of an Agreement and Plan of Merger by which Sirenza acquired Premier,

3 | Plaintiffs entered into a Registration Rights Agreement ("the Contract") on February 4, 2006, in

4 | Santa Clara County.  A true and correct copy of the Contract is attached hereto as Exhibit A and

5 | incorporated by reference as though fully set forth here.

6 |      9.    As part of the Agreement and Plan of Merger, the parties further agreed to use best

7 | efforts to remove any impediments or delays in order to consummate and make effective the

8 | transactions agreed to therein.

9 |      10.    Pursuant to the Contract and in connection with the Merger, Sirenza issued

10 | Plaintiffs 7,000,000 shares of Sirenza common stock, par value $0.001 per share.

11 |      11.    According to the Contract, Sirenza was required to use commercially reasonable

12 | efforts to file a Registration Statement on a Form S-3 ("Form S-3 Registration Statement") one

13 | business day after Sirenza's filing of a Form 8-K in connection with the Merger or as soon

14 | thereafter as possible.

15 |      12.    Sirenza filed the 8-K in connection with the Merger on June 15, 2006, but did not

16 | file a Form S-3 Registration Statement until November 16, 2006.

17 | **FIRST CAUSE OF ACTION**

18 | **(Breach of Contract – Against Defendants RFMD and DOES 1-50)**

19 |      13.    Plaintiffs hereby incorporate and re-allege all of the allegations of paragraphs 1

20 | through 12 of this Complaint.

21 |      14.    The Contract constitutes a valid and enforceable contract between Plaintiffs and

22 | Defendant's predecessor-in-interest, Sirenza.

23 |      15.    Plaintiffs have fulfilled all of their obligations, conditions and duties pursuant to

24 | the Contract.

25 |      16.    Sirenza breached the Contract by failing to file a Form S-3 Registration Statement

26 | by the date required by the Contract or as soon thereafter as possible using commercially

27 | reasonable efforts.  Sirenza continued to act in a commercially unreasonable manner and delayed

28 |

1 | the filing of a Form S-3 Registration Statement for several months after June 2006. Sirenza

2 | further breached its obligations by failing to use best efforts to obtain all consents as provided by

3 | the Agreement and Plan of Merger.

4 |      17.   As a direct and proximate result of Sirenza's breach of contract, Plaintiffs have

5 | been damaged in an amount exceeding tens of millions of dollars, the exact amount to be proven

6 | at trial: Plaintiffs were unable to sell their Sirenza shares on or around June 30, 2006—as they

7 | would have been able to had Sirenza filed the Form S-3 Registration Statement timely—and had

8 | to sell at substantially lower prices in 2007.

9 |      18.   Plaintiffs are entitled to recovery for Sirenza's breach of contract from RFMD,

10 | Sirenza's successor-in-interest to the Contract.

11 | **SECOND CAUSE OF ACTION**

12 | **(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against Defendants**

13 | **RFMD and DOES 1-50)**

14 |      19.   Plaintiffs hereby incorporate and re-allege all of the allegations of paragraphs 1

15 | through 18 of this Complaint.

16 |      20.   By virtue of the Contract, there existed an implied covenant of good faith and fair

17 | dealing whereby Sirenza promised to act in good faith toward, and deal fairly with, Plaintiffs.

18 | Sirenza further promised not to deprive Plaintiffs of their legitimate rights and expectations under

19 | the Contract, not to injure their rights to receive the benefits of that contract, and to take

20 | reasonable steps to satisfy any conditions to Plaintiffs' receipt of benefits under the contract.

21 |      21.   Sirenza breached the implied covenant of good faith and fair dealing by failing to

22 | act in good faith to ensure that all necessary conditions to the filing of the Form S-3 Registration

23 | Statement were satisfied in a manner consistent with the expectations of the parties.

24 |      22.   As a direct and proximate result of the breaches of the implied covenant of good

25 | faith and fair dealing described herein, Plaintiffs were damaged in an amount exceeding tens of

26 | millions of dollars, the exact amount to be proven at trial.

27 |      23.   Plaintiffs are entitled to recovery for Sirenza's breach of contract from RFMD,

28 |

OHS West:260424911.7

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

1    Sirenza's successor-in-interest to the Contract.

2         **WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows:

3         1.    For entry of a money judgment against Defendants in an amount reflecting the

4    difference in what Plaintiffs could have sold their shares for had Sirenza complied with the

5    Contract and what Plaintiffs actually sold their shares for given the breach;

6         2.    For costs of suit incurred herein; and

7         3.    For such other further relief as the court may deem just and proper.

8

9    Dated: April 25, 2008                    GEORGE YUHAS
                                              YAS RAOUF
10                                            ORRICK, HERRINGTON & SUTCLIFFE LLP

11

12                                            By_____
                                                          Yas Raouf
13                                                 Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OHS West:260424911.7

-5-

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

*EXECUTION*

## REGISTRATION RIGHTS AGREEMENT

THIS REGISTRATION RIGHTS AGREEMENT (this "**Agreement**") is made and entered into as of February 4, 2006, by and among Sirenza Microdevices, Inc., a Delaware corporation (the "**Company**"), Phillip Chuanze Liao ("**Seller**") and Yeechin Shiong Liao ("**Spouse**" and, collectively with Seller, the "**Security Holders**").

### RECITALS

A.      The Security Holders and the Company have entered into an Agreement and Plan of Merger, dated the date hereof by and among the Company, Premier Devices, Inc., a California corporation ("**PDI**"), Penguin Acquisition Corporation ("**Merger Sub**"), and the Security Holders (the "**Merger Agreement**") which provides for the merger of PDI with and into Merger Sub (the "**Merger**"). Capitalized terms that are used but not otherwise defined herein shall have the respective meaning ascribed thereto in the Merger Agreement.

B.      In connection with the Merger, the Security Holders will be issued shares of common stock of the Company, par value $0.001 per share ("**Common Stock**"); and

C.      Pursuant to the terms of the Merger Agreement, the Company and the Security Holders are entering into this Agreement as of the date hereof, which Agreement shall become effective as of the Closing (as defined below).

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants and agreements herein contained, the Company and the Security Holders agree as follows:

### ARTICLE 1.
### DEFINITIONS

1.1      Defined Terms. In addition to the terms defined elsewhere in this Agreement, for all purposes of and under this Agreement, the following respective terms shall have the respective meanings indicated below:

(a)      "**Affiliate**" means any Person that, directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with a Person, as such terms are used in and construed under Rule 144 promulgated under the Securities Act.

(b)      "**Business Day**" means any day other than Saturday, Sunday or other day on which commercial banks in New York City are authorized or required by law to remain closed.

(c)      "**Closing**" means the closing of the Merger.

(d) **"Commission"** means the Securities and Exchange Commission.

(e) **"Eligible Market"** means any of the New York Stock Exchange, the American Stock Exchange, the Nasdaq National Market or the Nasdaq Small Cap Market.

(f) **"Exchange Act"** means the Securities Exchange Act of 1934, as amended.

(g) **"Form 8-K Date"** means the date on which the financial statements required to be filed by the Company pursuant to Item 9.01 of Form 8-K with respect to the transactions contemplated in the Merger Agreement have been filed with the Commission.

(h) **"Person"** means an individual, partnership, firm, corporation, association, joint venture, trust, unincorporated organization or other entity, including any governmental entity or any department, agency or political subdivision thereof and any syndicate or group that would be deemed to be a person under Section 13(d)(3) of the Exchange Act.

(i) **"Prospectus"** means the prospectus with respect to the Registrable Securities in the form first filed with the Commission pursuant to Rule 424(b) of the Rules and Regulations, or filed as part of the Registration Statement at the time of effectiveness if no Rule 424(b) filing is required, as such prospectus may be amended or supplemented from time to time.

(j) **"Registrable Securities"** means any Common Stock issued pursuant to the Merger Agreement, together with any Common Stock issued upon any stock split or stock dividend with respect to the foregoing. As such, shares of Common Stock shall cease to be Registrable Securities when (i) a registration statement with respect to the sale of such shares of Common Stock shall have become effective under the Securities Act and such shares of Common Stock shall have been disposed of pursuant to such registration statement, (ii) such shares of Common Stock shall have been sold or otherwise distributed pursuant to Rule 144 (or any successor provision), (iii) all of such shares of Common Stock may be sold pursuant to Rule 144 (or any successor provision) without any volume or manner of sale restrictions thereunder, or (iv) such shares of Common Stock shall have ceased to be outstanding.

(k) **"Registration Statement"** means the registration statement required to be filed pursuant to Section 2.1, as such registration statement may be amended or supplemented from time to time, including any information deemed to be a part thereof as of the time of effectiveness pursuant to Rule 430A, 430B or 430C.

(l) **"Required Filing Date"** means 1 Business Day after the Form 8-K Date.

(m)    **"Rule 144," "Rule 415," and "Rule 424"** means Rule 144, Rule 415 and Rule 424, respectively, promulgated by the Commission pursuant to the Securities Act, as such Rules may be amended from time to time, or any similar rule or regulation hereafter adopted by the Commission having substantially the same effect as such Rule.

(n)    **"Rules and Regulations"** means the rules and regulations promulgated under the Securities Act.

(o)    **"Securities Act"** means the Securities Act of 1933, as amended.

(p)    **"Trading Day"** means (a) any day on which the Common Stock is listed or quoted and traded on its primary Trading Market, (b) if the Common Stock is not then listed or quoted and traded on any Eligible Market, then a day on which trading occurs on the Nasdaq National Market (or any successor thereto), or (c) if trading does not occur on the Nasdaq National Market (or any successor thereto), any Business Day.

(q)    **"Trading Market"** means the Nasdaq National Market or any other Eligible Market on which the Common Stock is then listed or quoted.

## ARTICLE 2.
## REGISTRATION RIGHTS

2.1    Resale Registration Statement.

(a)    The Company shall use its commercially reasonable efforts, subject to receipt of necessary information from the Security Holders for inclusion in such filing, to prepare and file with the Commission on or prior to the Required Filing Date a Registration Statement covering the resale of all Registrable Securities for an offering to be made on a delayed or continuous basis pursuant to Rule 415. The Registration Statement shall be on Form S-3 (except if the Company is not then eligible to register for resale the Registrable Securities on Form S-3, in which case such registration shall be on another appropriate form in accordance herewith).

(b)    The Company shall use its commercially reasonable efforts to cause the Registration Statement to be declared effective by the Commission as promptly as possible after the filing thereof, and shall use commercially reasonable efforts to keep the Registration Statement continuously effective under the Securities Act until the earlier of (i) the tenth anniversary of the date that the Registration Statement is first declared effective by the Commission and (ii) the date when all securities covered by the Registration Statement shall have ceased to be Registrable Securities (the **"Effectiveness Period"**).

(c)    The Company shall notify the Seller, as agent for the Security Holders, in writing promptly (and in any event within two Trading Days) after

receiving notification from the Commission that the Registration Statement has been declared effective.

(d)    The Company's obligations pursuant to this Section 2.1 and Section 2.2 shall be conditioned upon receipt from the Security Holders of a Selling Stockholder Questionnaire in the form attached hereto as Exhibit A, as such form may be hereafter revised as necessary to reflect amendments to the Securities Act and the rules and regulations promulgated thereunder.

(e)    Notwithstanding anything in this Agreement to the contrary, the Company may, by written notice to the Seller, require that the Security Holders immediately cease the sale of shares of Common Stock pursuant to the Registration Statement if the Company's Board of Directors determines in good faith that, due to pending material corporate developments, it is in the best interests of the shareholders of the Company to suspend the use of the Registration Statement. Upon receipt of such notice, the Security Holders shall immediately discontinue any sales of Registrable Securities pursuant to the Registration Statement until copies of a supplemented or amended Prospectus and any additional or supplemental filings that are incorporated or deemed incorporated by reference in such Prospectus have been made available to the Security Holders on Commission's EDGAR database or otherwise, or until the Seller is advised in writing by the Company that the then-current Prospectus may be used. The Company's rights under this Section 2.1(e) may be exercised for a period of no more than 45 days at a time and not more than two times in any twelve-month period.

2.2    Registration Procedures. In connection with the Company's registration obligations hereunder, the Company shall:

(a)    Not less than three Trading Days prior to the filing of the Registration Statement, furnish to the Seller copies of all such documents proposed to be filed in connection with the Registration Statement, which documents will be subject to the review of the Seller.

(b)    (i) Prepare and file with the Commission such amendments, including post-effective amendments, to the Registration Statement as may be necessary to keep the Registration Statement continuously effective during the Effectiveness Period; (ii) cause the Prospectus to be amended or supplemented by any necessary prospectus supplement, and as so supplemented or amended to be filed pursuant to Rule 424; and (iii) respond as promptly as reasonably possible to any comments received from the Commission with respect to the Registration Statement or any amendment thereto and as promptly as reasonably possible provide the Seller true and complete copies of all correspondence from and to the Commission relating to the Registration Statement.

(c)    Notify the Seller as promptly as reasonably possible, and (if requested) confirm such notice in writing no later than two Trading Days thereafter, of any of the following events: (i) the Commission notifies the Company whether there will be a "review" of the Registration Statement; (ii) the Commission comments in writing on the Registration Statement (in which case the Company shall deliver to the Seller a copy

of such comments and of all written responses thereto); (iii) the Registration Statement or any post-effective amendment is declared effective; (iv) the Commission or any other Federal or state governmental authority requests any amendment or supplement to the Registration Statement or Prospectus or requests additional information related thereto; (v) the Commission issues any stop order suspending the effectiveness of the Registration Statement or initiates any proceedings for that purpose; (vi) the Company receives notice of any suspension of the qualification or exemption from qualification of the Registrable Securities for sale in any jurisdiction, or the initiation or threat of any proceeding for such purpose; or (vii) any revision to the Registration Statement or Prospectus as supplemented or amended is required so that it will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(d)    Use its commercially reasonable efforts to avoid the issuance of or, if issued, obtain the withdrawal of (i) any order suspending the effectiveness of the Registration Statement, or (ii) any suspension of the qualification (or exemption from qualification) of any of the Registrable Securities for sale in any jurisdiction, at the earliest practicable moment.

(e)    Upon request, make available to the Seller, without charge, at least one conformed copy of the Registration Statement and each amendment thereto, including financial statements and schedules, all documents incorporated or deemed to be incorporated therein by reference, and all exhibits to the extent requested by the Seller (including those previously furnished or incorporated by reference) promptly after the filing of such documents with the Commission.

(f)    Promptly deliver to the Security Holders, without charge, as many copies of the Prospectus and each amendment or supplement thereto as the Security Holders may reasonably request.

(g)    (i) In the time and manner required by the primary Trading Market, prepare and file with such Trading Market any required additional shares listing application covering all of the Registrable Securities; (ii) take all commercially reasonable steps necessary to cause such Registrable Securities to be approved for listing on each Trading Market as soon as possible thereafter; (iii) provide to the Seller evidence of such listing; and (iv) use commercially reasonable efforts to maintain the listing of such Registrable Securities on each such Trading Market or another Eligible Market.

(h)    Use commercially reasonably efforts to register or qualify or cooperate with the Security Holders in connection with the registration or qualification (or exemption from such registration or qualification) of such Registrable Securities for offer and sale under the securities or blue sky laws of such jurisdictions within the United States as the Seller requests in writing, to keep each such registration or qualification (or exemption therefrom) effective during the Effectiveness Period and to do any and all other acts or things reasonably necessary or advisable to enable the disposition in such jurisdictions of the Registrable Securities covered by the Registration Statement;

*provided, however,* that the Company shall not be obligated to file any general consent to service of process or to qualify as a foreign corporation or as a dealer in securities in any jurisdiction in which it is not so qualified or to subject itself to taxation in respect of doing business in any jurisdiction in which it is not otherwise subject.

        (i)    Cooperate with the Security Holders to facilitate the timely preparation and delivery of certificates representing Registrable Securities to be delivered to a transferee pursuant to the Registration Statement, which certificates shall be free, to the extent permitted by this Agreement and applicable law, of all restrictive legends, and to enable such Registrable Securities to be in such denominations and registered in such names as the Security Holders may request.

        (j)    Upon the occurrence of any event described in Section 2.2(c)(vii), as promptly as reasonably possible, prepare a supplement or amendment, including a post-effective amendment, to the Registration Statement or a supplement to the related Prospectus or any document incorporated or deemed to be incorporated therein by reference, and file any other required document so that the Registration Statement will not contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading and that the Prospectus, as thereafter delivered will not contain an untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

        2.3    <u>Obligations of the Security Holders.</u>  Each Security Holder agrees that he or she will comply with the prospectus delivery requirements of the Securities Act as applicable to it in connection with sales of Registrable Securities pursuant to the Registration Statement. Each Security Holder further agrees that, upon receipt by Seller of a notice from the Company pursuant to Section 2.1(e) or upon receipt by Seller of notice from the Company of the occurrence of any event of the kind described in Sections 2.2(c)(v), (vi) or (vii), the Security Holders will discontinue the disposition of Registrable Securities under the Registration Statement until the Security Holders' receipt of the copies of the supplemented Prospectus and/or amended Registration Statement contemplated by Section 2.2(j), or until Seller is advised in writing by the Company that the use of the then-current Prospectus may be resumed. The Company may provide appropriate stop orders to enforce the provisions of this Section 2.3.

        2.4    <u>Registration Expenses.</u>  The Company shall pay (or reimburse the Security Holders for) all fees and expenses incident to the performance of the Company's obligations under Sections 2.1 and 2.2, including without limitation (a) all registration and filing fees and expenses, including without limitation those related to filings with the Commission and in connection with applicable state securities or Blue Sky laws, (b) printing expenses (including without limitation expenses of printing certificates for Registrable Securities and of printing prospectuses reasonably requested by the Security Holders), (c) fees and expenses of counsel of the Company, and (d) all listing fees to be paid by the Company to the Trading Market. Each Security Holder shall be responsible for paying the underwriters' commission or brokerage fees and taxes of any kind

(including, without limitation, transfer taxes) applicable to any disposition, sale or transfer of Registrable Securities by such Security Holder.

    2.5    <u>Indemnification</u>.

        (a)    <u>Indemnification by the Company</u>. The Company agrees to indemnify and hold harmless the Security Holders against any losses, claims, damages, liabilities or expenses to which the Security Holders may become subject, under the Securities Act, the Exchange Act, or any other federal or state statutory law or regulation insofar as such losses, claims, damages, liabilities or expenses (or actions in respect thereof as contemplated below) arise out of or are based upon (i) any untrue statement or alleged untrue statement of any material fact contained in the Registration Statement, the Prospectus, or any amendment or supplement thereto, or (ii) the omission or alleged omission to state in any of them a material fact required to be stated therein or necessary to make the statements in any of them (in the case of the Prospectus only, in light of the circumstances under which they were made), not misleading, and will reimburse the Security Holders for any legal and other expenses as such expenses are reasonably incurred by the Security Holders in connection with investigating, defending, settling, compromising or paying any such loss, claim, damage, liability, expense or action; *provided, however,* that the Company will not be liable in any such case to the extent that any such loss, claim, damage, liability or expense arises out of or is based upon (i) an untrue statement or alleged untrue statement or omission or alleged omission made in the Registration Statement, the Prospectus or any amendment or supplement to the Registration Statement or Prospectus in reliance upon and in conformity with written information furnished to the Company by or on behalf of PDI at or prior to the Closing or a Security Holder expressly for use therein or in any document incorporated by reference therein, (ii) the failure of a Security Holder to comply with the covenants and agreements contained in Section 2.3 of this Agreement, or (iii) any untrue statement or omission of a material fact in any Prospectus that is corrected in any subsequent Prospectus that was delivered to the Seller before the pertinent sale or sales by a Security Holder.

        (b)    <u>Indemnification by the Security Holders</u>. The Security Holders, jointly and severally, will indemnify and hold harmless the Company, each of its directors, each of its officers who sign the Registration Statement and each person, if any, who controls the Company within the meaning of the Securities Act, against any losses, claims, damages, liabilities or expenses to which the Company, each of its directors, each of its officers who sign the Registration Statement or controlling person may become subject, under the Securities Act, the Exchange Act, or any other federal or state statutory law or regulation insofar as such losses, claims, damages, liabilities or expenses (or actions in respect thereof as contemplated below) arise out of or are based upon (i) any failure on the part of the Security Holders to comply with the covenants and agreements contained in Sections 2.3 of this Agreement or (ii) any untrue or alleged untrue statement of any material fact contained in the Registration Statement, the Prospectus, or any amendment or supplement to the Registration Statement or Prospectus, or the omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein (in the case of the Prospectus only, in light of the circumstances under which they were made), not misleading, in each case to the extent,

but only to the extent, that such untrue statement or alleged untrue statement or omission or alleged omission was made in the Registration Statement, the Prospectus, or any amendment or supplement thereto, in reliance upon and in conformity with written information furnished to the Company by or on behalf of PDI at or prior to the Closing or a Security Holder expressly for use therein or in any document incorporated by reference therein, and the Security Holders, jointly and severally, will reimburse the Company, each of its directors, each of its officers who signed the Registration Statement or controlling person for any legal and other expense reasonably incurred by the Company, each of its directors, each of its officers who signed the Registration Statement or controlling person in connection with investigating, defending, settling, compromising or paying any such loss, claim, damage, liability, expense or action for which such person is entitled to be indemnified in accordance with this Section 2.5(b).

(c)    Indemnification Procedure.

(i) Promptly after receipt by an indemnified party under this Section 2.5 of notice of the threat or commencement of any action, such indemnified party will, if a claim in respect thereof is to be made against an indemnifying party under this Section 2.5, promptly notify the indemnifying party in writing of the claim; but the omission so to notify the indemnifying party will not relieve it from any liability which it may have to any indemnified party for contribution or otherwise under the indemnity agreement contained in this Section 2.5 except to the extent it is prejudiced as a result of such failure.

(ii) In case any such action is brought against any indemnified party and such indemnified party seeks or intends to seek indemnity from an indemnifying party, the indemnifying party will be entitled to participate in, and, to the extent that it may wish, jointly with all other indemnifying parties similarly notified, to assume the defense thereof; *provided, however,* if the defendants in any such action include both the indemnified party and the indemnifying party and the indemnified party shall have reasonably concluded that there may be a conflict between the positions of the indemnifying party and the indemnified party in conducting the defense of any such action or that there may be legal defenses available to it or other indemnified parties that are different from or additional to those available to the indemnifying party, the indemnified party or parties shall have the right to select separate counsel reasonably acceptable to the indemnifying party to assume such legal defenses and to otherwise participate in the defense of such action on behalf of such indemnified party or parties. Upon receipt of notice from the indemnifying party to such indemnified party of its election so to assume the defense of such action, the indemnifying party will not be liable to such indemnified party under this Section 2.5 for any legal or other expenses subsequently incurred by such indemnified party in connection with the defense thereof unless:

a)    the indemnified party shall have employed such counsel in connection with the assumption of legal defenses in accordance with the proviso to the preceding sentence (it being understood, however, that the indemnifying party shall not be liable for the expenses of more than one separate counsel, approved by

such indemnifying party representing all of the indemnified parties who are parties to such action), or

b) the indemnifying party shall not have engaged counsel to represent the indemnified party (or both the indemnified and indemnifying party, as applicable) within a reasonable time after notice of commencement of action, in each of which cases the reasonable fees and expenses of counsel to the indemnified party shall be at the expense of the indemnifying party.

(d)    Contribution.    If a claim for indemnification under this Section 2.5 is unavailable to an indemnified party (by reason of public policy or otherwise), then each indemnifying party, in lieu of indemnifying such indemnified party, shall contribute to the amount paid or payable by such indemnified party as a result of any losses, claims, damages, liabilities or expenses referred to in this Agreement, in such proportion as is appropriate to reflect the relative fault of the indemnifying party and indemnified party, respectively, in connection with the actions, statements or omissions that resulted in such losses, claims, damages, liabilities or expenses as well as any other relevant equitable considerations.   The relative fault of such indemnifying party and indemnified party shall be determined by reference to, among other things, whether any action in question, including any untrue or alleged untrue statement of a material fact or omission or alleged omission of a material fact, has been taken or made by, or relates to information supplied by, such indemnifying party or indemnified party, and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such action, statement or omission.   The amount paid or payable by a party under this Section 2.5(d) as a result of any losses, claims, damages, liabilities or expenses shall be deemed to include, subject to the limitations set forth in this Section 2.5, any reasonable attorneys' or other reasonable fees or expenses incurred by such party in connection with any proceeding to the extent such party would have been indemnified for such fees or expenses if the indemnification provided for in this Section was available to such party in accordance with its terms.

The parties hereto agree that it would not be just and equitable if contribution pursuant to this Section 2.5(d) were determined by pro rata allocation or by any other method of allocation that does not take into account the equitable considerations referred to in the immediately preceding paragraph.   No party to this Agreement guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any other party to this Agreement who was not guilty of such fraudulent misrepresentation.

### ARTICLE 3.
### MISCELLANEOUS

3.1    Effective Time; Termination.    This Agreement shall become effective concurrent with the Closing, and shall be null and void, and no party hereto shall have any obligation hereunder, if the Merger Agreement is terminated pursuant to its terms prior to the Closing.   This Agreement may be terminated at any time by the mutual written consent of the Company and the Security Holders.

    3.2    Notices.    All  notices,  requests,  demands,  and  other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally or by commercial messenger or courier service on the Party to whom notice is to be given, or on the third day after mailing if mailed to the Party to whom notice is to be given, by first class mail registered or certified, postage prepaid, and properly addressed as follows:

If to the Company:

    Sirenza Microdevices, Inc.
    303 South Technology Court
    Broomfield, CO 80021
    Attention: Robert Van Buskirk
    Facsimile: (303) 327-3483

    with a copy (which shall not constitute notice) to:

    Wilson Sonsini Goodrich & Rosati
    Professional Corporation
    650 Page Mill Road
    Palo Alto, CA 94304
    Attention: Steven V. Bernard
    Facsimile: (650) 493-6811

and to:

    Wilson Sonsini Goodrich & Rosati
    Professional Corporation
    One Market, Spear Tower
    Suite 3300
    San Francisco, CA 94105
    Attention: Michael S. Ringler
    Facsimile: (415) 947-2099

If to Seller and/or Spouse:

    Phillip Chuanze Liao and Yeechin Shiong Liao
    165 Patricia Drive
    Atherton, CA 94027
    Facsimile: (408) 521-1920

with a copy (which shall not constitute notice) to:

    Orrick, Herrington & Sutcliffe LLP
    1000 Marsh Road
    Menlo Park, CA  94061
    Attention: Lowell D. Ness
    Facsimile: (650) 614-7401

3.3     No Third Party Beneficiaries.     Nothing contained in this Agreement shall be construed to confer upon or give to any person or entity other than the Parties hereto and their successors and permitted assigns any rights or remedies under or by reason of this Agreement.

3.4     Entire Agreement.     This Agreement, the Merger Agreement and the other Ancillary Agreements referred to therein set forth the entire agreement of the Parties hereto with respect to the matters contained herein and no other prior or contemporaneous agreement or understanding pertaining to any such matter shall be effective for any purpose.

3.5     Governing Law.     This agreement shall be governed by and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws of any jurisdiction.

3.6     Jurisdiction.     With respect to any matter based upon or arising out of this Agreement or the transactions contemplated by this Agreement that seeks temporary or injunctive relief or specific performance, each of the parties (a) consents to the jurisdiction and venue of the state courts of the State of California located in the county of Santa Clara or San Francisco, (b) agrees that process may be served upon them in any manner authorized by the laws of the State of California for such persons, (c) waives the defense of an inconvenient forum and covenants not to assert or plead any objection which they might otherwise have to such jurisdiction, venue and such process, and (d) agrees that a final judgment in such legal proceeding shall be final, binding and enforceable in any court of competent jurisdiction.

3.7     Assignment.     This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns.   Notwithstanding the foregoing, the Security Holders may not assign this Agreement or any of their respective rights, interests or obligations hereunder without the prior written consent of the Company.

3.8 Counterparts.     This Agreement may be signed by the Parties in counterparts and the signature pages combined shall create a document binding on all Parties.

3.9 Severability.     If any provision of the Agreement is held to be invalid or unenforceable at law, that provision will be reformed as a valid provision to reflect as closely as possible the original provision giving maximum effect to the intent of the Parties, or if that cannot be done, will be severed from the Agreement without affecting the validity or enforceability of the remaining provisions.

3.10     Construction.     The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.  The language used in this Agreement will be deemed to be the

language chosen by the parties to express their mutual intent, and no rules of strict construction will be applied against any party.

       3.11   <u>Appointment of Seller as Agent</u>.  Spouse hereby appoints Seller as her agent and attorney-in-fact, with full power of substitution, to act for and on her behalf in respect of this Agreement.

           *[Remainder of page intentionally left blank]*

**CERTIFICATE OF SERVICE**

I, Rosemary Lustan, declare:

I am employed in Santa Clara County. I am over the age of 18 years and not a party to the within action. My business address is Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304-1050. I am readily familiar with Wilson Sonsini Goodrich & Rosati's practice for collection and processing of correspondence for next-day delivery by an express mail service. In the ordinary course of business, correspondence would be consigned to an express mail service on this date.

On this date, I served the **CIVIL COVER SHEET** and **NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1441(a)** on the person(s) listed below by placing the document(s) described above in an envelope addressed as indicated below, which I sealed. I consigned the envelope(s) to an express mail service by placing it/them for collection and processing on this day, following ordinary business practices at Wilson Sonsini Goodrich & Rosati.

George A. Yuhas, Esq.
Yas Raouf, Esq.
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Palo Alto, California on May 22, 2008.

Rosemary Lustan

3366767_1.DOC

CERTIFICATE OF SERVICE

JS 44 (Rev. 12/07) (cand rev 1-16-07)

**CIVIL COVER SHEET**

**ORIGINAL**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**

Phillip Chuanze Liao and Yeechin Shiong Liao

**(b)** County of Residence of First Listed Plaintiff San Mateo, California
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
George A. Yuhas (SBN 78678); Yas Raouf (SBN 254962)
Orrick, Herrington & Sutcliffe LLP
405 Howard Street, San Francisco, CA 94105
Telephone: 415.773.5700; Facsimile: 415.773.5759

**DEFENDANTS**

RF Micro Devices, Inc., a North Carolina corporation, and DOES 1 through 50, inclusive

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Ignacio E. Salceda (SBN 164017); Betty Chang Rowe (SBN 214068)
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road, Palo Alto, CA 94304-1050
Telephone: 650.493.9300; Facsimile: 650.565.5100

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [x] 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury — Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [x] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus - Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- [ ] 1  Original Proceeding
- [x] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332 (diversity)

Brief description of cause:
Breach of contract action arising out of purchase of plaintiffs' company

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [ ] No

**VIII. RELATED CASE(S) IF ANY**

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [x] SAN JOSE

DATE   May 22, 2008

SIGNATURE OF ATTORNEY OF RECORD

American LegalNet, Inc.
www.FormsWorkflow.com

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    · **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                    Brief Description: Unauthorized reception of cable service
VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.

American LegalNet, Inc.
www.FormsWorkflow.com